# United States Court of Appeals
## For the First Circuit

No. 01-2431

UNITED STATES OF AMERICA,

Appellee,

v.

ILLIO MATOS,

Defendant, Appellant.

No. 01-2432

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS OVALLES-TORRES,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Selya, Circuit Judge.

      Luis Rafael Rivera for appellant Matos.
      Rafael F. Castro Lang for appellant Ovalles-Torres.
      Aixa Maldonado-Quiñones, Assistant United States Attorney,
with whom H.S. Garcia, United States Attorney, and Sonia I. Torres-
Pabón, Assistant United States Attorney, were on brief, for
appellee.

—————————————

May 7, 2003

—————————————

**SELYA**, <u>Circuit Judge</u>. Congress enacted the so-called "safety valve," 18 U.S.C. § 3553(f), as a vehicle for shielding certain first-time offenders from the draconian effects of mandatory minimum sentences. But the safety valve is not available upon demand; to qualify for it, a defendant must make a multifaceted showing (including a showing that he has disclosed to the government, truthfully and completely, all relevant information concerning the offense of conviction and any related offenses).

Defendants-appellants Illio Matos and Carlos Ovalles-Torres attempted to make that showing.[1] The district court methodically weighed their proffers and determined that they were ineligible for relief under the safety valve. <u>United States</u> v. <u>Ovalles-Torres</u>, 161 F. Supp. 2d 55, 58-60 (D.P.R. 2001). Having reviewed the record with care, we find no clear error in the district court's determination. We therefore affirm the stated terms of imprisonment.

There is, however, a secondary issue. The lower court also ordered each appellant to serve a ten-year term of supervised release following the end of his incarceration. The appellants challenge both the legality of the elongated supervised release

---

[1]The record reveals several inconsistencies as to nomenclature. For example, Matos's first name is variously spelled "Illio" or "Ilio," and the surname of his codefendant is variously spelled "Ovalles-Torres" and "Ovalle-Torres." In each instance, we have adopted what appears to us, all things considered, to be the most likely spelling.

terms and the manner in which they were imposed. On this issue, we conclude that ten-year terms of supervised release were within the court's authority. Nevertheless, we agree with the parties that a procedural irregularity occurred: in imposing the ten-year terms of supervision, the court made what amounted to an upward departure without giving the appellants adequate notice of its intentions. Consequently, we vacate that aspect of the sentences and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The second superseding indictment in this case implicated the appellants, along with others, in an elaborate drug-smuggling and drug-trafficking operation. On January 25, 2000, the appellants pleaded guilty to a single count of that indictment, thus admitting that they had conspired with others to possess and distribute large quantities of cocaine. See 21 U.S.C. §§ 841(a)(1), 846. Each appellant entered into a written plea agreement. These agreements contemplated the possibility — but only the possibility — that the district court might impose a sentence without regard to any statutory minimum "if the Court finds that the defendant meets the criteria established in [the safety valve statute, 18 U.S.C. § 3553(f)]."

This brings us to the statute. With its enactment, Congress specifically excepted from statutory minimum sentences any defendant who meets the following criteria:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (2000).

Against this statutory backdrop, we return to the case at hand. Law enforcement agents debriefed the appellants, one by one, in order to gain whatever information they might possess concerning the offense of conviction — the conspiracy — or any other offenses that were part of the same scheme or course of conduct. See id. § 3553(f)(5). After comparing the appellants' stories with

-5-

information gleaned elsewhere, the interrogators concluded that the appellants had been neither completely truthful nor especially forthcoming during their debriefings. As a result, the government promptly notified the appellants that it intended to oppose their attempt to invoke the safety valve.

Although the appellants have separate attorneys on appeal, both of them were represented below by the same counsel. That lawyer pressed the government to disclose the basis for its belief that the appellants had not fully complied with the statute, but the government refused to elaborate. It likewise refused a request that it conduct another round of debriefings. Instead, the prosecutors noted that it was a defendant's burden to prove his eligibility for the safety valve; warned that, if nothing more was forthcoming, they would present evidence at the appropriate time and place to rebut any claim of eligibility; and reminded defense counsel that the sentencing court would make the ultimate eligibility determination. The government added that a defendant knows when he has withheld information during a debriefing, and that such a defendant is free to augment his disclosures at any time prior to the sentencing hearing. Finally, the prosecutors took the position that the law did not require them to make agents available to extract such additional information by question and answer.

The district court subdivided the sentencing hearings into two parts. It began with separate hearings for each appellant on the question of safety valve eligibility. After holding evidentiary hearings on August 14 and September 14, 2000 — the first for Matos and the second for Ovalles-Torres — the court found that neither man had proven that he had timely furnished the government with truthful and complete information. Ovalles-Torres, 161 F. Supp. 2d at 58-60. These findings, which we discuss infra, precluded access to the safety valve.

On September 5, 2001, the court convened a joint hearing dedicated to the imposition of sentences. Each appellant stipulated that he bore responsibility for at least five but less than fifteen kilograms of cocaine. The government and the district court accepted the stipulations, which triggered ten-year mandatory minimum sentences. See 21 U.S.C. § 841(b)(1)(B). The court thereupon sentenced each appellant to an incarcerative term of that duration, to be followed by ten years of supervised release. These appeals ensued.

## II. ANALYSIS

The appellants jointly maintain that the district court committed no fewer than three significant errors. The first assignment of error challenges the court's determination that they were ineligible for the safety valve. The second involves a claim that the appellants did not receive the process that was due. The

third questions the imposition of ten-year periods of supervised release.[2]  For efficiency of analysis, we address each of these claims of error separately.

### A.  **Safety Valve Eligibility**.

In the court below, the appellants asserted that they had truthfully and completely answered all the questions that the government had asked, and, therefore, that the burden had shifted to the government to show that they were ineligible for the safety valve.  The appellants added that if the government believed that either of them was withholding information, it had a duty to come forward with the basis for that belief so that the affected defendant would have a fair chance to explain away the alleged omission.  The district court rejected this contention as turning the statute upside down.  The court stated in pertinent part:

> The statute says that the defendant has to come forth and truthfully testify as to everything he knows.  Now if he is going to sit back and say "Well, they didn't ask me that," then that is not what the statute requires.  The statute requires an affirmative step on his part to come in and say, "I want to be debriefed because I want to tell you everything that I know."  .  .  .   [T]he

---

[2]In addition, one appellant — Ovalles-Torres — raises a transparently meritless Sixth Amendment claim.  This claim is premised on the assertion that the district court unlawfully excluded him from the initial phase of his own sentencing hearing. That premise is belied by the record:  the court excluded Ovalles-Torres from the initial phase of his codefendant's sentencing hearing.  This sequestration was well within the court's discretion.  See Geders v. United States, 425 U.S. 80, 87 (1976); Fed. R. Evid. 615.

-8-

> affirmative steps have to be taken by the defendant if he wants to have an opportunity to qualify for [the safety valve].

Ovalles-Torres, 161 F. Supp. 2d at 58-59 (quoting court's comments during initial phase of sentencing hearing).

In assaying a sentencing court's determination that a defendant failed to qualify for the safety valve, the standard of appellate review varies according to the foundation upon which that determination is based. See United States v. Marquez, 280 F.3d 19, 22 (1st Cir. 2002). To the extent that the determination rests on conclusions of law, appellate review is plenary. Id. To the extent, however, that the determination hinges on differential factfinding, appellate review is for clear error. Id. The district court's determinations in this case are challenged both on legal and factual grounds, so both standards are in play.

It is too elementary to warrant citation of authority that we must test the district court's determination of safety valve ineligibility against the five requirements limned in section 3553(f). The parties agree that the first four criteria have been satisfied. The battleground, then, is the fifth. As to that requirement, we have made it pellucid that nothing short of truthful and complete disclosure will suffice (and, therefore, that truthful and complete disclosure is a condition precedent to relief under the safety valve). See, e.g., Marquez, 280 F.3d at 24; United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

A defendant bears the burden of showing that he made appropriate and timely disclosures to the government. Marquez, 280 F.3d at 25; United States v. Richardson, 225 F.3d 46, 53 (1st Cir. 2000). This burden obliges the defendant to prove to the court that the information he supplied in the relevant time frame was both truthful and complete. Marquez, 280 F.3d at 25. Consequently, a safety valve debriefing is a situation that cries out for straight talk; equivocations, half-truths, and veiled allusions will not do. After all, Congress's evident purpose in creating the safety valve was "to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes." United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000) (emphasis supplied). The only intended beneficiaries of Congress's largesse are those who have satisfied the five statutory criteria. United States v. Miranda-Santiago, 96 F.3d 517, 528 (1st Cir. 1996). Others simply do not qualify. Id.

We afford de novo review to the district court's interpretation of a statute. Marquez, 280 F.3d at 22. In this instance, the legal standard to which the district court held the appellants comports with the body of law elucidated above. See Ovalles-Torres, 161 F. Supp. 2d at 57-58. Thus, the appellants' initial line of attack gains them no ground.

The appellants have a series of fallback positions. First, they insist that they filled any gaps in their original disclosures by their testimony during the aforementioned hearings. Generally speaking, this is the wrong focal point. The governing statute, 18 U.S.C. § 3553(f)(5), requires truthful and complete disclosures to be made "not later than the time of the sentencing hearing." This means that the deadline for making truthful and complete disclosure is the moment that the sentencing hearing starts.[3] See United States v. Marin, 144 F.3d 1085, 1091-92 (7th Cir. 1998); United States v. Long, 77 F.3d 1060, 1062 (8th Cir. 1996) (per curiam).

This is a sensible — and wholly proper — reading of the statute. In the first place, section 3553(f)(5) requires disclosure to the government, not the court. In the second place, we have noted that Congress "aim[ed] its [safety valve] leniency at . . . defendants who did their best to cooperate to the extent of making full disclosure." Montanez, 82 F.3d at 522 (emphasis in

---

[3]Here, however, the parties bypassed this principle. The prosecutor informed the court that he had advised defense counsel that the appellants would be allowed to add additional information to their initial safety valve disclosures in writing prior to sentencing or in testimony at the sentencing hearing itself. Both men in fact testified at the start of their respective sentencing hearings and made additional disclosures. It is unclear whether the sentencing court shared the government's view of the proper time line, but in the peculiar circumstances of this case and in an abundance of caution, we consider this testimony as part of the appellants' safety valve proffers. In the final analysis, it makes no difference.

-11-

original).  To engage in carefully guarded comments during a debriefing and then attempt to recoup lost ground after commencement of the sentencing hearing is manipulation, not cooperation.  See Marin, 144 F.3d at 1092.

Retreating a step further, the appellants challenge the district court's findings of fact as clearly erroneous.  This challenge lacks force.

The clear error standard is exceedingly deferential. Marquez, 280 F.3d at 26.  Under it, an appellate court ought not to disturb either findings of fact or conclusions drawn therefrom unless the whole of the record compels a strong, unyielding belief that a mistake has been made.  Cumpiano v. Banco Santander, 902 F.2d 148, 152 (1st Cir. 1990).  The process of evaluating witness testimony typically involves fact-sensitive judgments and credibility calls that fit comfortably within the margins of the clear error standard.  Marquez, 280 F.3d at 26.

In this case, the sentencing court carefully examined the witnesses' testimony, listened to arguments involving credibility, and based its denial of the safety valve on specific factual findings.  See Ovalles-Torres, 161 F. Supp. 2d at 59-60.  In resolving the issue of whether truthful and complete disclosure had been made adversely to both appellants, the court cited book and verse.  It gave examples of the appellants' untruthfulness in the course of their safety valve debriefings and recounted several

-12-

instances in which the appellants' statements were incomplete. See, e.g., id. Although another trier might not have reached the same conclusion, our review of the record confirms the plausibility of these findings as to both appellants (and, thus, confirms the absence of clear error).

We add a few words in the interest of assuring our own effectiveness in reviewing the fairness of this kind of decision. Our obligation to accord substantial deference to the sentencing court is best carried out — particularly in close cases — if that court shares its basis for concluding that the disclosure efforts fell short. From its written decision, we can readily understand the court's failure to be impressed by the record in Ovalles-Torres's case. For example, his denial (contradicted by a government agent) that he had met with the ringleader of the conspiracy, his failure to identify codefendant Matos in a critical meeting at a restaurant, and his failure to inform the government that he had participated in an additional narcotics load are telling indicia of the quality of his disclosures. Thus, we descry no error as to the district court's refusal to grant Ovalles-Torres the benefit of the safety valve.

In contrast, the court's findings as to Matos's untruthfulness are much less impressive. The court found that Matos had falsely denied communicating with a coconspirator after the winding-up of conspiracy; that he had failed to reveal a

-13-

telephone conversation with a coconspirator in which he was asked if he knew "that the dogs have that" and replied that they had nothing to worry about because they were not involved in that situation; and that he had falsely denied that the same coconspirator had initially recommended him to the leader of the enterprise. These findings, collectively, do not weigh heavily. Nevertheless, other evidence that can be gleaned from the record indicates that Matos was not entirely forthcoming — and this evidence (e.g., his contradictory testimony about the drug-carrying capacity of his boat, misleading information anent the function of a satellite telephone, and nondisclosure of his participation in another drug smuggle) seems of greater significance than the few examples cited in the district court's written decision. Although the question is closer as to Matos, we find, in the end, that the record contains adequate support for the lower court's denial of the safety valve.

The appellants, ably represented on appeal, attempt to explain away their flawed disclosures. These carefully constructed explanations are marginally plausible but ultimately unpersuasive. The default rule is that when more than one sensible interpretation of a particular set of circumstances can supportably be drawn, a sentencing court's decision to credit one alternative and reject another cannot be deemed clearly erroneous. United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990).

-14-

The appellants persist. They next suggest that, even if their testimony was inconsistent or fragmentary in some respects, they nonetheless made a good-faith effort to answer the questions asked by the government agents. They add that, for the most part, their contradictions and omissions related to peripheral matters, and thus should not deprive them of the benefits of the safety valve.

We considered and rejected a similar argument in Marquez, noting that the "safety valve provision explicitly obligates a defendant . . . to provide 'all' information." 280 F.3d at 25 (quoting 18 U.S.C. § 3553(f)). In other words, section 3553(f)(5), fairly read, requires a defendant to be forthcoming. He cannot simply respond to questions while at the same time keeping secret pertinent information concerning the offense of conviction and related offenses that falls beyond the scope of direct interrogation.

To be sure, we have left a door open for "a defendant who does not furnish information because he innocently believes that it would be of no interest." Id. at 25 n.4. But the district judge is the sentry who guards this portal, and he obviously was not persuaded that the appellants' contradictions and omissions had an innocent explanation. While we regard the court's conclusions vis-à-vis Matos as close to the line, we are mindful that the sentencing judge had the benefit of seeing and hearing the

witnesses at first hand. We are, therefore, satisfied that this record offers no justification for overriding his ruling.

The appellants' last attack on the safety valve determinations raises the most serious question. They accuse the government of not asking them about information that the government learned from other sources, "sandbagging" them, and "ambushing" them during the initial phase of the sentencing hearings. They argue that because courts "interpret plea agreements more or less as contracts," Ortiz-Santiago, 211 F.3d at 151, the government's failure to ask follow-up questions, reinterview the appellants, or reveal the basis of its intention to oppose their quest for the safety valve constituted a breach of its obligation to perform in good faith under the plea agreements. Upon close perscrutation, however, this argument founders.

The government's actions in this case did not violate the plea agreements. Each agreement made it crystal clear that the availability of the safety valve depended on "the Court find[ing] that the defendant meets the [statutory] criteria." The government specifically reserved the right, among other things, "to dispute sentencing factors or facts material to sentencing." A defendant's veracity and the extent of his cooperation are facts material to sentencing, and the government has the right — indeed, the duty — to identify falsehoods, evasions, and suspicious omissions for the court at the time of sentencing. See Montanez, 82 F.3d at 523.

Moreover, the government has a right to expect that a defendant who seeks the boon of the safety valve will make a clean breast of things; it has no obligation to interview him repeatedly in an effort to pry loose additional nuggets of information.

We flatly reject the suggestion that the government acted in bad faith because it would not tell the appellants, early on, why it believed that they were dissembling. A defendant who aspires to the safety valve must be forthcoming. If the government reasonably suspects that the defendant is being devious, it is not obliged to tip its hand as to what other information it may have so that the defendant may shape his disclosures to cover his tracks, minimize his own involvement, or protect his confederates.

Let us be perfectly clear. The government is not free to play cat and mouse with defendants, leading safety valve debriefings down blind alleys and then blaming the defendants for failing to disclose material facts. Nor can the government squeeze all the juice from the orange and then deprive a truthful and cooperative defendant of his end of the bargain by juxtaposing trivial inconsistencies or exaggerating inconsequential omissions. But the sentencing court has both the power and the coign of vantage to permit it to deal effectively with such situations. Our case law gives trial judges broad discretion to find safety valve eligibility in spite of government opposition, unintentional bevues, immaterial omissions, or bona fide misunderstandings. See,

e.g., Marquez, 280 F.3d at 25 n.4 (indicating that eligibility for the safety valve would not be jeopardized if a defendant "innocently believes that [certain information] would be of no interest" to the government). That power has proven to be a sufficient deterrent to prosecutorial bullying. See Montanez, 82 F.3d at 523 ("Courts have thus far found it fairly easy to cull serious efforts at full disclosure from mere pretense.").

Of course, if the record in a particular case were to reveal that the sentencing court either had been snookered by the prosecution or had been unresponsive to its task, this court would not hesitate to intervene. But this is not such a case. The district court carefully considered the totality of the circumstances, assessed the witnesses' veracity, and determined from the evidence that it was the appellants, not the government agents, who were attempting to game the system. On this record, there is simply no basis for the suggestion that the court erred in refusing to impute bad faith to the government with respect to the performance of its obligations under the plea agreements.

### B. Due Process.

In a variation on this theme, the appellants assert that the conduct of the sentencing hearings violated their due process rights. In support of this conclusory allegation, they offer a stream of vague allusions. With one exception, these allegations are completely undeveloped. We therefore disregard them. See

<u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (remarking the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

The sole remaining point is the appellants' claim that their sentencing hearings were held in violation of Local Rule 418.8. That rule provides:

> If any party decides to call witnesses at the imposition of sentence hearing, counsel shall submit, in writing, to the Court, the Probation Officer, and opposing counsel, not later than forty-eight (48) hours before the date set for the imposition of sentence, a statement containing (a) the names of the witnesses, (b) a synopsis of their anticipated testimony, and (c) an estimate of the anticipated length of each testimony.

D.P.R.R. 418.8

The appellants posit that the government's refusal to divulge the identity of the witnesses to be called during the initial phase of the sentencing hearings and the nature of their testimony transgressed this rule. The appellants, however, did not raise this argument in the lower court, and a party who foregoes a timely objection to noncompliance with a local rule is in a perilously poor position to attempt to raise that noncompliance after the fact. <u>United States</u> v. <u>Martinez-Vargas</u>, 321 F.3d 245, 249 (1st Cir. 2003).

Even were we to assume, favorably to the appellants, that this failure to object constituted a forfeiture rather than an

-19-

outright waiver, that characterization would not assist the appellants' cause. We review forfeited objections for plain error. United States v. Olano, 507 U.S. 725, 733-34 (1993); Martinez-Vargas, 321 F.3d at 249-50. Under the plain error rubric, an aggrieved party must demonstrate: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Assuming that the failure to abide by the local rule satisfies the first two conditions for plain error, the appellants fail to show that this infraction meets either the third or fourth condition. We explain briefly.

Each appellant signed a plea agreement that contemplated the possibility that the government might dispute the applicability of the safety valve. They were informed well in advance of the initial sentencing hearings that the government intended not only to challenge the quality of their disclosures but also to offer evidence of their uncooperative behavior. The only witnesses called by the government were the law enforcement agents who had interrogated the appellants and a codefendant in the offense conduct. The appellants neither claimed surprise nor sought a continuance on grounds related to the identity of these witnesses. This is critically important, for we long have recognized that

-20-

courts are free to assume that a party's need for more time to adjust his game plan is limited to matters expressed in a motion for a continuance. See, e.g., United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993). Finally, the transcript shows that the defense was able to mount a vigorous cross-examination. This too is a salient consideration in determining the existence vel non of prejudice. See id. at 1179.

We need not belabor the obvious. The combination of these factors leaves little doubt but that the government's failure to adhere strictly to Local Rule 418.8 did not subject the appellants to any significant level of surprise or otherwise prejudice their substantial rights.

We add that the circumstances of this case make it particularly appropriate to hold the appellants to the predictable consequences of their failure to object to the lack of notice. The District of Puerto Rico's Local Rules allow its judges to suspend or modify any such rule for purposes of a particular case. See D.P.R.R. 105; see also United States v. Diaz-Villafane, 874 F.2d 43, 45-46 (1st Cir. 1989) (discussing D.P.R.R. 105); United States v. Acosta Martinez, 89 F. Supp. 2d 173, 177 (D.P.R. 2000) (same). We can easily envision situations in which literal enforcement of Local Rule 418.8 could conflict with Congress's carefully crafted incentives for a defendant to provide truthful and complete disclosure prior to the commencement of his sentencing hearing.

-21-

Given the scenario here, we think it likely that the district court, faced with a timely objection, would have suspended or modified the rule for purposes of the initial phase of the sentencing hearings.

That ends this aspect of the matter. In this case, bypassing Local Rule 418.8 did not affect the appellants' substantial rights, and, moreover, did not seriously impair the fairness or integrity of the sentencing proceedings. Hence, we find no plain error in the government's noncompliance with Local Rule 418.8 and, accordingly, reject the appellants' due process claim.

### C.  Supervised Release.

We turn now to the appellants' contention that their terms of supervised release must be vacated. We agree in part with this contention: while a ten-year term of supervised release was not unlawful with respect to the offense of conviction, such a term only can be imposed upon adherence to proper procedural safeguards.

We need not tarry. In United States v. Cortes-Claudio, 312 F.3d 17 (1st Cir. 2002), this court held that 21 U.S.C. § 841(b), which mandates a term of supervised release of "at least five years" for covered drug-trafficking offenses, means what it seems to say: that the sentencing court can impose a turn of supervised release for such an offense in excess of five years. Id. at 18. That holding is directly applicable here. Under

-22-

21 U.S.C. § 841(b), as interpreted in <u>Cortes-Claudio</u>, the district court in this case had the authority to impose a ten-year term of supervised release in regard to each of the counts of conviction.

That does not end our inquiry. <u>Cortes-Claudio</u> also made it clear that a supervised release term of more than five years for such an offense constituted an upward departure from the sentencing guidelines. <u>See</u> <u>id.</u> at 18-19; <u>see</u> <u>also</u> USSG §5D1.2 (stating that, in general, supervised release terms for Class A and B felonies shall be "at least three years but not more than five years").

Because the imposition of a term of supervised release exceeding five years represents an upward departure, the sentencing court must give prior notice to the defendant of its intention to impose a term of such an extended duration and must state on the record the aggravating circumstances that justify the upward departure. <u>See</u> <u>Cortes-Claudio</u>, 312 F.3d at 18-19; <u>see</u> <u>also</u> <u>Burns</u> v. <u>United States</u>, 501 U.S. 129, 136 (1991) ("Congress did not intend district courts to depart from the Guidelines <u>sua</u> <u>sponte</u> without first affording notice to the parties."). Here, the district court (which sentenced the appellants without the benefit of our analysis in <u>Cortes-Claudio</u>) neither afforded them proper notice of its intent to depart nor delineated the aggravating circumstances upon which it proposed to base the upward departure. To that extent, the sentencing court erred.

To cure this defect, we vacate both of the ten-year supervised release terms and remand to the district court for resentencing as to the length of the terms of supervised release. See United States v. Nelson-Rodriguez, 319 F.3d 12, 54 (1st Cir. 2003). Withal, we do not disturb the other components of the appellants' sentences.

## III. CONCLUSION

To recapitulate, Congress designed the safety valve statute, 18 U.S.C. § 3553(f), with a view that a defendant who satisfies the first four prongs of the statute nonetheless must prove himself deserving of the safety valve by providing truthful and complete information to the government prior to the commencement of his sentencing hearing. The court below found that neither appellant met this fifth requirement. The record before us adequately evinces both that the court applied the proper legal standard and that its factfinding was not clearly erroneous. Consequently, we uphold its determination that the appellants failed to prove their eligibility for the safety valve. We likewise reject the appellants' importunings that the court's handling of the matter denied them due process. Finally, we acknowledge that the court acted too abruptly in imposing ten-year terms of supervised release. That error must be corrected.

We need go no further. We affirm the appellants' sentences, save only for the terms of supervised release. We

vacate those terms and remand for resentencing as to that aspect only.

**Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion**.