# United States Court of Appeals
## For the First Circuit

No. 07-2372

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ PADILLA-COLÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, District Judge.[*]

Hector L. Ramos-Vega, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, was on brief, for appellee.

July 31, 2009

---

[*]Of the District of New Hampshire, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  José Padilla-Colón ("Padilla") was charged with one count of possession with intent to distribute 7.1 grams of cocaine base, or "crack," in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).  Pursuant to a plea agreement, Padilla pled guilty and waived his right to appeal.  At sentencing the district court determined that Padilla did not qualify for the "safety valve" provision, 18 U.S.C. § 3553(f), and thus was subject to a mandatory minimum sentence of five years.  On appeal, Padilla argues that the district court erred in finding that he did not meet the requirements of the safety valve, and that, despite the waiver, the plea agreement does not bar his appeal.  Applying the test established in <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 24-26 (1st Cir. 2001), we find that the waiver of appeal is invalid.  However, because the district court did not err in denying Padilla the benefit of the safety valve, we affirm the sentence.

**I**

Where an appeal follows a guilty plea, we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report, and the transcript of the sentencing hearing.  <u>United States</u> v. <u>Mercedes Mercedes</u>, 428 F.3d 355, 357 (1st Cir. 2005).  In this case we also rely on the signed statement of facts accompanying the appellant's plea agreement.

See <u>United States</u> v. <u>Laguna-Estela</u>, 394 F.3d 54, 55 (1st Cir. 2005).

After receiving a telephone call from a source claiming that Padilla was armed and stored weapons for another individual, Puerto Rico police surveilled his property on January 20 and 24, 2006. On both occasions, they observed Padilla carrying a weapon in his waistband.[1] On the second occasion, they saw him holding a bag from which the barrel of a rifle was protruding. He was also observed getting into and out of his car, a white Suzuki Vitara. On February 3, police executed a search warrant for Padilla's home and car. While searching the vehicle, officers discovered a gym bag containing 160 vials of crack and 121 rounds of .40 caliber ammunition.

On May 24, 2006, a federal grand jury returned a two-count indictment against Padilla, charging him with possession with intent to distribute several controlled substances. At arraignment, Padilla pled not guilty and then moved to suppress the evidence recovered in the search of his car. After the district court denied the motion, Padilla and the government executed a plea agreement on November 30. Under its terms, the government promised to move to dismiss the indictment. Padilla would then plead guilty to an information charging him with one count of possession with

---

[1] The visual display of a firearm is a crime under Puerto Rico law. <u>See</u> P.R. Laws Ann. tit. 25, § 456a(d)(1).

intent to distribute 7.1 grams of crack. Padilla also agreed not to appeal his sentence, as long as the district court "accept[ed] [the plea] agreement and sentence[d] him according to its terms and conditions."

Based on the quantity and kind of drugs recovered, the plea agreement calculated Padilla's base offense level under the Sentencing Guidelines as 26, but identified reductions for acceptance of responsibility and compliance with the safety valve, resulting in an adjusted base offense level of 21. The agreement then stated,

> A total base offense level of 21 and a Criminal History Category I results in a guideline sentencing range of 37-46 months. In the event the defendant fails to comply with all of the provisions of the safety valve, the adjusted base offense level remains at 23 which has a corresponding imprisonment range of 46-57 months. As the parties are aware, however, for possession of five (5) grams or more of cocaine base the statutory penalty is not less than five years imprisonment.

Shortly thereafter, the agreement specified the safety valve requirements and noted, "Should defendant meet all the requirements of the 'safety valve' provisions . . . , defendant's Base Offense Level shall be reduced by two (2) levels."

A change-of-plea hearing was held on November 30. At the hearing, the magistrate judge inquired into Padilla's understanding of the sentencing recommendation. At the magistrate's request, an Assistant United States Attorney explained the sentencing

-4-

guidelines calculation and the maximum penalties possible for the offense, including the mandatory minimum sentence of five years. He discussed the safety valve reduction, explaining,

> should [Padilla] comply with all of the provisions of the safety valve, he is also looking at an additional two (2) point reduction . . . . The Defendant understands that should he fail to meet safety valve, then of course he is looking at a base offense level of 23 . . . . . All of that notwithstanding Judge, there is a five (5) years [sic] mandatory minimum . . . .

The magistrate judge confirmed that Padilla understood the explanation, asking,

> Do you understand that in order to be entitled to the two (2) level reduction under the safet [sic] valve, you shall comply with five (5) requirements, as stated in paragraph nine (9) of your plea agreement, [including the requirement that you] must have provided truthful information to the Government prior to sentencing?

Padilla answered affirmatively.

The magistrate judge inquired into Padilla's understanding of his waiver of appellate rights. After identifying the waiver and reading its terms to Padilla, she asked, "Are you aware that depending on the facts the court finds and the sentence it eventually imposes, both you and the Government may appeal the sentence in this case subject to that waver [sic]?" Padilla said he was so aware, and then entered his guilty plea. The magistrate judge found that Padilla knew the terms of the plea agreement and had entered it "in an intelligent and voluntary manner." See Fed.

R. Crim. P. 11(b). She filed her Report and Recommendation on December 11, 2006, recommending that the district court accept Padilla's guilty plea. On December 21, the district court accepted the plea.

In April 2007, two DEA agents and an Assistant United States Attorney interviewed Padilla as part of the safety valve process. During the interview, Padilla told the agents that he did not own the gym bag seized from his car in the February 3, 2006 search. He had stolen it the night before, he said, from the trunk of an abandoned car, where it had been stored by local drug dealers who owed him money. Padilla had previously observed the dealers place drugs and money in a bag and hide the bag in the car trunk. Believing that the bag would contain money, he retrieved it from the trunk; instead, it contained only drugs and ammunition. Padilla did not know what to do with the contraband, and the next morning it was seized by police. Before the interview ended, the Assistant United States Attorney expressed some skepticism to Padilla about his story.

In a sealed motion filed with the district court soon after, the government indicated that it found Padilla's testimony "not totally truthful." Several of Padilla's claims, prosecutors said, lacked credibility: that he stole the gym bag from drug dealers, that he had never possessed it before being arrested by Puerto Rico police, and that he had never sold drugs or possessed

a weapon.  The claims conflicted with the sworn affidavit of a Puerto Rico police officer, Agent Héctor Figueroa-Velázquez ("Agent Figueroa"), who had surveilled Padilla in January 2006.  Because Padilla had not been totally truthful, the government said, he did not qualify for the safety valve reduction.  In his response, Padilla emphasized that he had provided extensive detail to the government agents about how he knew where the bag was, what it might contain, and who owned it.  He pointed out that his story was consistent with other facts in the record and was corroborated in part by the DEA agents present at the safety valve interview.  In contrast, Padilla claimed, the government had produced no evidence proving that he had been untruthful.  Prosecutors simply found his story hard to believe.

On June 22, 2007, the district court issued a sealed order finding Padilla ineligible for safety valve benefits.  The court observed that Padilla had "had trouble with his version [of the facts] since his interview with the U.S. Probation Officer," one month before the safety valve debriefing.  Padilla had changed several parts of his story in response to questions raised by the Probation Officer.  Padilla repeated the changed story to the DEA agents and the Assistant United States Attorney during his safety valve interview.  Moreover, the story contradicted the sworn affidavit of Agent Figueroa.

At his sentencing hearing on August 2, 2007, Padilla moved the district court to reconsider its order denying him the benefit of the safety valve. In response to the court's concern that Padilla's story contradicted the sworn testimony of a police officer, Padilla emphasized that he had long maintained that Agent Figueroa lied in the affidavit, having moved on those grounds to suppress the evidence obtained from the search of his car. Moreover, Padilla insisted that he had only clarified his story in response to doubts from the Probation Officer, not changed it. As early as February 3, 2006, after he was arrested, and May 12, 2006, in his preliminary hearing, Padilla had stated that he stole the bag containing the drugs -- the same testimony he provided in the safety valve interview. Finding nothing new in Padilla's request, the court denied the motion.

Before sentencing Padilla, the court returned to his waiver of appeal. It noted,

> Mr. Padilla, although you pled guilty and pursuant to the terms of your plea agreement you waived your right to appeal the judgment and the sentence imposed in this case, the Court advises you that you can appeal your conviction if you believe that your plea of guilty was unlawful or involuntary, or if there is some other fundamental defect in the proceedings that was not waived by your plea agreement.

The court then sentenced Padilla to the statutory mandatory minimum of five years' imprisonment. See 21 U.S.C. § 841(b)(1)(B)(iii).

Padilla appeals his sentence. Recognizing the potential obstacle posed by the waiver of appeal in his plea agreement, he asks that we not honor it because his claim falls outside its scope and the waiver is invalid. As a substantive matter, he argues that the district court erred in denying him the benefits of the safety valve. The government contests both claims. Because Padilla's right to seek relief from his sentence in this court turns on the validity of the waiver of appeal, we determine the waiver's effect before considering the substantive claim. See United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008).

## A. Waiver of Appeal

We enforce a waiver of appeal if it is valid and the defendant's claim lies within its scope. See United States v. Acosta-Roman, 549 F.3d 1, 3 (1st Cir. 2008); United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007) ("Even a knowing and voluntary appeal waiver only precludes appeals that fall within its scope."). In this case, because we find that the waiver is invalid, we need not reach the question of whether the defendant's appeal falls within its scope.

A waiver of appellate rights is valid if the defendant entered into it knowingly and voluntarily. United States v. Gil-Quezada, 445 F.3d 33, 36 (1st Cir. 2006). We determine whether a waiver was knowing and voluntary by applying the three-prong test

announced in Teeter, 257 F.3d at 24. Under this test, an appellate waiver is valid as long as: (1) the written plea agreement contains a clear statement elucidating the waiver and delineating its scope; (2) at the plea hearing the district court inquired specifically about any waiver of appellate rights, and its interrogation of the defendant sufficed to ensure that the waiver was knowing and voluntary; and (3) the denial of the right to appeal would not constitute a miscarriage of justice. See Teeter, 257 F.3d at 24-25.

The written plea agreement satisfies the first prong of the Teeter test. The language of the waiver itself elucidates the right being waived by the defendant, namely, the "right to appeal the judgment and sentence." The scope of the waiver is limited to "this case" and to any sentence consistent with the plea agreement's terms and conditions. We have previously held that the same language satisfied the first Teeter prong. Gil-Quezada, 445 F.3d at 36; United States v. De-La-Cruz Castro, 299 F.3d 5, 10 (1st Cir. 2002). Padilla does not contend otherwise.

The second prong of Teeter requires us to examine the transcript of the colloquy between the court and the defendant at the change-of-plea hearing. Teeter, 257 F.3d at 24. Our focus in doing so is "to ascertain whether the court's interrogation suffices to ensure that the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence."

-10-

Id.; see also De-La-Cruz Castro, 299 F.3d at 10. As Federal Rule of Criminal Procedure 11(b)(1)(N) requires, the colloquy must include a specific inquiry "into any waiver of appellate rights." Teeter, 257 F.3d at 24. In explaining the extent of the waiver and what right of appeal remains, if any, the court "should be especially careful in its choice of words, taking pains to explain to the defendant that her right to appeal is circumscribed by her preexisting waiver." Teeter, 257 F.3d at 25. Context is also important in determining whether a statement is sufficiently misleading to nullify a waiver. See United States v. Soto-Cruz, 449 F.3d 258, 261 (1st Cir. 2006) ("The context in which such a statement is made is important to our determination . . . ."); De-La-Cruz Castro, 299 F.3d at 11-12 ("Context is important . . . ."); Teeter, 257 F.3d at 24-25.

Padilla argues that statements by the court during his change-of-plea and sentencing hearings were so misleading that they abrogated his waiver of appeal. During the change-of-plea hearing, the magistrate judge asked Padilla whether he understood that "depending on the facts the court finds and the sentence it eventually imposes, both you and the government may appeal the sentence in this case subject to that waver [sic]?" Padilla points out that the court posed this question shortly after explaining that the guidelines sentencing range would depend on his satisfaction of the safety-valve requirements, including the

interview. In this context, he says, his affirmative answer to the judge's question meant that he understood that he would retain the right to appeal if the district court found that he was ineligible for the safety valve. Padilla suggests that his misunderstanding was subsequently "compounded" by the district court at sentencing, when it stated that Padilla could appeal if he believed his guilty plea "was unlawful or involuntary," or there was "some other fundamental defect in the proceedings that was not waived by [the] plea agreement."

We agree that, taken in context, the court's statement at the change-of-plea hearing was so misleading that it nullified Padilla's waiver of appeal. The court's choice of language -- that Padilla could appeal "depending on the facts this court finds" -- reasonably suggested to Padilla that he retained a right to appeal adverse factual findings. The context of the statement reinforced this view. Because the statement closely followed the court's explanation of the safety-valve, the phrase "the facts this court finds" could reasonably have been understood by Padilla to refer to safety-valve eligibility, and, in particular, to a finding that he had failed to provide truthful information to the government. In such a context, the magistrate judge's statement that Padilla could appeal "depending on the facts this court finds" suggested that he retained a right to appeal an adverse determination of his eligibility for safety-valve relief.

This suggestion by the court, rather than illuminating the meaning of the written waiver of appeal, contradicted its terms, which are not similarly limited in language or effect. By its terms, Padilla's waiver covers appeals of his judgment and sentence, and applies as long as the district court sentences him according to the terms and conditions of the plea agreement. The terms of the plea agreement do not guarantee Padilla that he will be found eligible for safety-valve relief. Thus, Padilla waived his right to appeal his sentence regardless of whether the court found him eligible for the safety valve. See Acosta-Roman, 549 F.3d at 4 (discussing the terms of a similar waiver). By suggesting that Padilla retained appellate rights in the event of an adverse finding of safety-valve eligibility, the plea colloquy was so misleading that we cannot regard Padilla's waiver as knowing and voluntary.[2]

We therefore decline to enforce Padilla's waiver of appeal. Because there is no need to reach the third prong of Teeter, we now turn to the substantive claim on appeal.

---

[2] Because we conclude that the statement made at the change-of-plea hearing "mudd[ied] the waters," see Teeter, 257 F.3d at 25, we need not reach the issue of the court's statement at sentencing.

**B. Safety Valve Eligibility**

1. General principles

The standard of review applicable in safety-valve appeals "varies according to the foundation upon which [the safety-valve] determination is based." United States v. Matos, 328 F.3d 34, 38 (1st Cir. 2003). We review de novo safety-valve determinations to the extent they rest on conclusions of law. Id. We review for clear error safety-valve determinations to the extent they depend on findings of fact. Id. The clear error standard is "extremely deferential." United States v. Bermúdez, 407 F.3d 536, 542 (1st Cir. 2005) (citing United States v. Marquez, 280 F.3d 19, 26 (1st Cir. 2002)). Under it, "an appellate court ought not to disturb either findings of fact or conclusions drawn from the record unless the whole of the record compels a strong, unyielding belief that a mistake has been made." Bermúdez, 407 F.3d at 542 (internal quotation marks and citation omitted). Evaluation of witness testimony is reviewed for clear error, since it involves "fact-sensitive judgments and credibility calls." Matos, 328 F.3d at 40.

The "safety valve" provision exempts certain drug offenders from mandatory minimum sentences. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Congress's purpose in enacting the provision was to "mitigate the harsh effect of mandatory minimum sentences" on first-time, low-level offenders in drug trafficking schemes. United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st

-14-

Cir. 2000).[3]  To qualify for relief under the safety valve, a defendant must meet five requirements.  See 18 U.S.C. § 3553(f)(1)-(5).  Only the last requirement is at issue here.[4]  Under it, the defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  See 18 U.S.C. § 3553(f)(5).  "'[N]othing short of truthful and complete disclosure will suffice.'"  United

_____

[3] According to a House Report on the matter, while sentence reductions for mitigating factors were available to the most culpable, they did not operate to the benefit of the least culpable, whose guideline sentences already fell below the applicable mandatory minimums.  See H.R. Rep. No. 103-460 (1994), cited in United States v. Miranda-Santiago, 96 F.3d 517, 527 n.22 (1st Cir. 1996).  In response, the House sought to exempt a "narrow class" of drug defendants -- those least culpable -- from the mandatory-minimum sentencing scheme.  Id.

[4] The first four requirements are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act . . . .

18 U.S.C. § 3553(f)(1)-(4).
The appellant asserts in his brief that the government does not contest his satisfaction of the first four safety-valve requirements.  The government appears to agree.

States v. Rodriguez-Ortiz, 455 F.3d 18, 25 (1st Cir. 2006) (quoting Matos, 328 F.3d at 38). The defendant bears the burden of proving, by a preponderance of the evidence, that he has satisfied this requirement. See Miranda-Santiago, 96 F.3d at 529 n.25 (discussing all five requirements under § 3553(f)). We now turn to the specific claims of error, both of law and fact, raised by Padilla.

2. Legal claims

a. Burden of proof

Padilla argues that the defendant's burden of proof "does not arise until the government has made some preliminary showing, based on something more than opinion or disbelief, that the [safety-valve] proffer is incomplete or untruthful." Here, Padilla says, the government simply asserted to the district court that it found Padilla's story implausible. Taken alone, he argues, such an assertion is insufficient to support a finding that Padilla was untruthful.

There is no support in our law for the proposition that the government must make a "preliminary showing" before the defendant's burden of proof arises. The cases cited by the defendant establish only that "when the record, taken as a whole, will not support a finding that the defendant has failed to provide a truthful and complete proffer, the government's lack of confidence in the proffer is insufficient, in and of itself, to justify a denial of access to the safety valve." Marquez, 280 F.3d

-16-

at 24; see United States v. White, 119 F.3d 70, 73-74 (1st Cir. 1997); Miranda-Santiago, 96 F.3d at 529.  Where the record does provide some support, "a sentencing court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts."  Marquez, 280 F.3d at 24 (citing White, 119 F.3d at 74).  It need not base its determination on "independent rebuttal evidence" introduced by the government. Id.

Within this framework, a defendant's insistence that he has provided truthful and complete information does not necessarily overcome an unfriendly record.  See id. at 24-25 (observing that otherwise, "district courts would be bound to accept even the most arrant nonsense from a defendant's mouth so long as the government could not directly contradict it by independent proof," in effect "turn[ing] the burden of persuasion inside out").  Rather, when faced with a defendant who insists that he proffered truthful information, the sentencing court may make its own reasoned determination, in light of the facts on record, whether to credit the defendant's assertion.  See United States v. Bravo, 489 F.3d 1, 12 (1st Cir. 2007) (upholding rejection of admittedly "consistent" story in light of agent's testimony that it was "illogical"); Rodriguez-Ortiz, 455 F.3d at 25 (upholding denial of safety valve where district court did not credit defendant, who "simply den[ied] the charges against him," in light of his contradiction by record

evidence); Marquez, 280 F.3d at 24-25.  In the present case, the sentencing court followed precisely this method, identifying in its order specific facts on the record, see supra section I, in light of which the court refused to credit Padilla's assertion that he provided truthful information.

b. Proper basis for safety-valve determination

Padilla argues that the sentencing court erred in basing its determination on information other than the safety-valve proffer itself, namely, an earlier interview conducted by the case Probation Officer.  That interview, he says, was conducted "only for acceptance of responsibility purposes."  As such, it was "more limited" than the safety-valve interview and should not be considered.

Once again Padilla fails to adduce any legal authorities in support of his position.  In fact, sentencing courts assessing eligibility for the safety valve routinely rely on a variety of record materials in determining whether a defendant has provided truthful and complete information.  See Bermúdez, 407 F.3d at 542 (upholding determination based on comparison between safety-valve proffer and testimony at trial of co-defendant); Marquez, 280 F.3d at 24 (noting "internal inconsistencies between the proffer and other statements that the [defendant] himself had made"); Matos, 328 F.3d at 40 (upholding district court's determination in light of "other evidence that can be gleaned from the record").  There is

no sensible reason to limit the assessment of truthfulness to the safety-valve proffer itself. Inconsistencies between statements made during the proffer and statements made to the authorities on other occasions are not necessarily disqualifying. But the court may legitimately consider such inconsistencies in deciding on the truthfulness of the proffer.

3. Factual claims

Padilla argues that the district court committed clear error in finding that his safety-valve proffer had not been truthful. He makes several discrete challenges.

a. The change in Padilla's story

Padilla argues that the district court clearly erred in concluding that he had changed his account of the offense. We disagree. Even assuming, arguendo, that the two interviews differed in purpose, as Padilla argues, that difference cannot account for the material alterations Padilla made to his story on retelling. According to Padilla's initial account, he stole the bag containing the contraband when he was "visiting a friend [and] observed a man hiding a gym bag in the trunk of a vehicle." He stole it "thinking that maybe it was full of cash." After the Probation Officer expressed concern that Padilla had not provided her with "complete, accurate and truthful information," Padilla told a different story. He stated that he knew the owners of the bag, that they owed him $5,000, and that they had failed to pay him

-19-

back. During his safety-valve interview, he also stated that he had previously purchased drugs from the owners of the bag and that he expected the bag to contain drugs when he stole it. Even if the rough outlines of the two stories are consistent, the details and their implications differ markedly, and it cannot be clear error for a sentencing court to take note of such differences and find in those differences a lack of truthfulness.

### b. Agent Figueroa's affidavit

Padilla argues that the sentencing court committed clear error by crediting Agent Figueroa's affidavit. Again, we disagree. To be sure, Padilla has long insisted that Agent Figueroa falsified his affidavit. On the basis of this allegation and the required preliminary showing, Padilla obtained a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to determine the validity of the February 3, 2006 search warrant, which was based on the affidavit. In her Report and Recommendation, the magistrate judge who presided over the Franks hearing identified several reasons to question the veracity of Agent Figueroa's affidavit. Yet the magistrate judge also credited Agent Figueroa's testimony during the hearing, noting that he was "forthright in demeanor" and that "some evidence . . . corroborated Figueroa's version of events." She ultimately upheld the validity of the search warrant, and submitted Proposed Findings of Fact based on Agent's Figueroa's testimony. In light of this outcome and the substance of the magistrate judge's report, we

cannot conclude that the district court committed clear error in giving the affidavit the weight that it did. See Matos, 328 F.3d at 40-41 ("[W]hen more than one sensible interpretation . . . can supportably be drawn, a sentencing court's decision to credit one alternative and reject another cannot be deemed clearly erroneous."). Taking the measure of a sworn statement in view of its attempted impeachment is typical fact-finding, and the record simply does not compel a "strong, unyielding belief that a mistake has been made." See Bermúdez, 407 F.3d at 542 (internal quotation marks and citation omitted).

### c. The bag

Lastly, Padilla argues that the sentencing court committed clear error by determining that the bag seized from his car during the February 3, 2006 search was the same bag Agent Figueroa observed Padilla using to carry a rifle on January 24, 2006. It is true that the bag described in Agent Figueroa's affidavit was "blue and grey," while the bag discovered in the search of Padilla's automobile is described as being simply blue. However, the colors and features of the bags are not so dissimilar that it amounts to clear error to conclude that they were the same. The court might have discounted Agent Figueroa's testimony that the bag observed on January 24 was blue and grey, and not entirely blue, on the basis of his line of sight -- a matter thoroughly discussed during the Franks hearing. Agent Figueroa himself

testified that the bags were similar, although he was unsure whether they were the same. In light of the descriptions of the bags, the court's determination that they were the same was not clear error.

### d. Summary

As the record reveals, the story Padilla told at his safety-valve debriefing differed in material respects from Agent Figueroa's affidavit. Padilla denied ever possessing a weapon, while Agent Figueroa stated that he observed Padilla with three weapons. Moreover, Padilla altered his own account of how he acquired the bag of drugs and ammunition seized from his car during the February 3, 2006 search. There were no clear errors in the district court's specific factual findings, as set forth in its order rejecting Padilla's eligibility for the safety valve. District courts may reject safety-valve proffers based on a "reasoned assessment of the defendant's credibility in light of the facts" on record. Marquez, 280 F.3d at 24. Such was the case here.

**Affirmed**.