**Not for publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-2170

UNITED STATES,

Appellee,

v.

FELIX RAMONE MARTÍNEZ,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

_____

Before

Torruella, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

_____

Bryan K. Clauson on brief for appellant Felix Ramone Martínez.
Adi Goldstein, Assistant United States Attorney, Kenneth P. Madden, Assistant United States Attorney, Craig N. Moore, United States Attorney, on brief for appellee.

_____

February 25, 2004

_____

**Per Curiam**.  Felix R. Martínez pled guilty to conspiring to distribute and possess with intent to distribute the drug "ecstasy," and with distributing ecstasy on several occasions.  He appeals from his sentence on the ground that the sentencing court erred in failing to grant him a two-level decrease in his base offense level under the "safety valve" provisions of the United States Sentencing Guidelines. See U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2(a).[1]  Specifically, Martínez contests the district court's determination that he had not satisfied the fifth requirement under § 5C1.2(a), by "truthfully provid[ing] the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."Id. § 5C1.2(a)(5).

Martínez' initial argument is that the sentencing court erred in allowing the government to object to the two-level "safety valve" reduction conditionally proposed in the pre-sentence report ("PSR").  Martínez contends that the government's position that he had not satisfied the fifth requirement under § 5C1.2(a) amounted to an untimely objection to the PSR, beyond the fourteen-day period established under Fed. R. Crim. P. 32(f)(1).

The government's opposition to a two-level reduction under §

---

[1] § 2D1.1(b)(6) provides that a two-level reduction in the base offense level for a drug offense shall be awarded if the defendant meets the "safety valve" criteria set forth in § 5C1.2(a)(1)-(5).

5C1.2 did not constitute an objection to the PSR. The PSR had recommended the adjustment only if Martínez complied with § 5C1.2(5). Thus, the government's recommendation that the adjustment not be granted because Martínez had failed to comply with § 5C1.2(5) was entirely consistent with the PSR. Therefore, the recommendation did not run afoul of the 14-day period for filing objections to the PSR under Fed. R. Crim. P. 32(f)(1). The sentencing court was concerned about the "safety valve" interview occurring such a short time before the scheduled sentencing hearing on August 22, 2002. However, that concern was allayed by postponing the sentencing until September 3, 2002. There was no error in the sentencing court's consideration of the government's opposition to the "safety valve" adjustment.

The second and third arguments advanced by Martínez are that the sentencing court "failed to make an independent determination based upon reliable information as to whether the defendant qualified for the safety valve reduction," in violation of his due process rights, and erred in determining that he had not complied with § 5C1.2(5). "The defendant bears the burden of showing that he has made full disclosure (and, thus, that he is entitled to the benefit of the safety valve). This burden includes the obligation of proving to the court that he has provided truthful and complete information." United States v. Marquez, 280 F.3d 19, 23 (1st Cir. 2002). We "review for clear error the . . . factual determinations

underlying the question whether a defendant is entitled to such relief." United States v. Scharon, 187 F.3d 17, 22 (1st Cir. 1999).

Martínez faults the sentencing court for determining that he had not qualified for the "safety valve" reduction without either questioning the probation officer about Martínez' apparent non-compliance with § 5C1.2(5) or hearing testimony from the DEA agent who conducted the "safety valve" interview. However, Martínez neither raised these objections at the sentencing nor requested an evidentiary hearing, thus waiving any claim that it was error for the district court not to hold an evidentiary hearing. See United States v. Meade, 110 F.3d 190, 203 (1st Cir. 1997).

Martínez now contends that the sentencing court should not have arrived at a conclusion regarding his truthfulness until after Martínez' allocution at sentencing. Be that as it may, "the deadline for making truthful and complete disclosure is the moment that the sentencing hearing starts." United States v. Matos, 328 F.3d 34, 39 (1st Cir. 2003). Although Martínez protests that the guilty-plea hearing and the PSR included full and truthful admissions by Martínez, we have held that § 5C1.2(5) requires disclosure to a prosecutor and that statements to a probation officer are not sufficient. See United States v. Jiménez Martínez, 83 F.3d 488, 495 (1st Cir. 1996).

The sentencing court made its "safety valve" determination following extensive argumentation from defense counsel; it did not

merely rely upon the government's recommendation. The court "identified specific instances in which the proffer fell short" and it "explained why [it] did not credit the veracity of the appellant's statement[s]." Marquez, 280 F.3d at 24. The sentencing court considered the statements Martínez made during his safety valve interview in the context of the information presented at the change-of-plea hearing, as well as in the PSR, then found that Martínez had been untruthful in these two respects.

First, the court noted that Martínez had admitted, during the change-of-plea proceeding, to knowingly participating in the charged conspiracy to distribute ecstasy and to the specific charged offenses, including the August 7, 2001 transaction. However, at the "safety valve" interview, he had denied any knowing participation in the August 7 transaction, maintaining that "he had no idea this involved drugs or a drug deal." The sentencing court supportably found that the denial was "incredible," given that Martínez had already admitted to knowing participation in the August 7, 2001 transaction, and that prior to August 2001, he had been arrested for dealing ecstasy with Anglon. That finding was not clearly erroneous.

Second, the sentencing court found that Martínez had been untruthful in stating: "I don't keep samples on me, I don't sell drugs," in response to the government's question at the "safety valve" interview about providing Agent Cruz with the .27 gram

sample of heroin. The court construed that response as a denial that the sample delivery ever took place. Although the response could have been construed differently, the court's choice between plausible competing interpretations of the prevailing circumstances did not constitute clear error. See Scharon, 187 F.3d at 22. The district court simply found Martínez' denial to be incredible, based upon the record evidence, as supported by the information in the PSR regarding the relevant conduct on December 8 and 10, 2001 (to which no objection had been made by Martínez).

The record reveals that the sentencing court made an independent determination, based upon the evidence before it and after hearing defense counsel's arguments, that Martínez had not "truthfully provided" the government with all information and evidence he had regarding the charged offenses and relevant conduct. The court did not clearly err in finding that Martínez failed to satisfy the fifth "safety valve" requirement. See Marquez, 280 F.3d at 24 (upholding denial of "safety valve" reduction based upon district court's determination that "appellant's portrayal of himself as someone who was paid very little and who knew next to nothing about the details of the transactions in which he participated beggars credulity"); United States v. White, 119 F.3d 70, 74 (1st Cir. 1997) (upholding denial of "safety valve" reduction based upon district court's finding that "White's 'safety valve' interviews untruthfully minimized her

role in the conspiracy and disclaimed direct knowledge about the conspiracy" to which she had pled guilty).  "[A] safety valve debriefing is a situation that cries out for straight talk; equivocations, half-truths, and veiled allusions will not do." Matos, 328 F.3d at 39.

The sentence is affirmed.  See 1st Cir. R. 27(c).