# United States Court of Appeals
## For the First Circuit

No. 04-1222

UNITED STATES,

Appellee,

v.

FRANCISCO JOSÉ BERMÚDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lynch, Circuit Judge.

George J. West for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant United States Attorney, were on brief, for appellee.

May 23, 2005

**CAMPBELL**, <u>Senior Circuit Judge</u>. Francisco José Bermúdez pled guilty in the Rhode Island federal district court to two counts of drug offenses. In the plea agreement and at the plea hearing, Bermúdez admitted that the total drug weight was 8954.06 grams of cocaine. At sentencing, the district court found that Bermúdez had testified falsely at the trial of co-defendant Gonzola Velasquez, thereby relieving the government of any obligation under the plea agreement to file a substantial assistance motion under U.S.S.G. § 5K1.1.[1] The district court further found that Bermúdez did not qualify for a safety valve sentencing reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 because of his failure to establish that he truthfully provided to the government all information he had regarding the drug offenses. Based on the drug weight admitted by Bermúdez, the district court imposed the mandatory minimum sentence of ten years' imprisonment. <u>See</u> 21 U.S.C. § 841(b)(1)(A).

Bermúdez appeals from his sentence. He contends that the district court erred in not ordering specific performance of the government's agreement to file a substantial assistance motion and in denying him a safety valve reduction, either of which, if applied, would have allowed a sentence lower than the mandatory minimum sentence. <u>See</u> 18 U.S.C. §§ 3553(e), (f). Bermúdez also

---

[1]For purposes of computation, the district court used the Supplement to the 2002 United States Guidelines Manual incorporating guideline amendments effective April 30, 2003.

seeks a remand for resentencing under United States v. Booker, 125 S. Ct. 738 (2005), arguing that a jury, not the judge, should have made the factual determinations regarding substantial assistance and safety valve relief. Finding no error, we affirm.

## I. Background

On February 9, 2003, Bermúdez and Gonzola Velasquez drove from New York to Rhode Island, carrying with them cocaine for delivery at the home of one Shawn Montegio. Tipped off to the impending delivery by intercepted cell phone conversations, federal agents went to Montegio's house and there arrested Bermúdez, Velasquez, and Montegio in the course of their illegal transaction.

On February 12, 2003, a federal grand jury returned a four-count indictment charging: (1) Bermúdez, Montegio, and Velasquez with conspiring to distribute over five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; (2) the three men with possessing over five kilograms of cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2; and (3) Montegio with two firearm-related counts not relevant to this appeal.

On July 3, 2003, Bermúdez signed a plea agreement in which he agreed to plead guilty to the two counts naming him and agreed that the total weight of the cocaine was 8954.06 grams. The government agreed to recommend the lowest Guideline sentence or the ten-year mandatory minimum sentence, whichever was greater. The

plea agreement provided: "If Defendant qualifies for the 'safety valve' provision, 18 U.S.C. § 3553(f), the government will recommend the applicable 2-level decrease under the guidelines."

On July 22, 2003, the district court, after a hearing, accepted Bermúdez's guilty plea. Bermúdez specifically acknowledged the 8954.06 gram figure as to drug weight. At the change of plea hearing, the prosecutor described the elements of the safety valve test, including the fifth element, which he explained requires that "not later than the time of the sentencing hearing, the defendant truthfully provides to the Government all information and evidence that the defendant has concerning the offense or offenses that were part of the same course of conduct." See U.S.S.G. § 5C1.2(a)(5). Bermúdez said he understood the requirements.

On August 8 and 11, 2003, Bermúdez met with the government for two safety valve debriefings. Prior to the second meeting, the parties entered into a new two-page agreement supplementing the original plea agreement. In this supplemental agreement, Bermúdez agreed to be debriefed by federal agents and to testify at any trial. In exchange, the government agreed that, "[i]f Defendant is called as a witness and if Defendant's testimony is truthful, accurate and complete, the Government will move for a downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines." The agreement was conditioned on Bermúdez

providing "truthful, accurate and complete" information, and expressly relieved the government of its obligation to file a substantial assistance motion if Bermúdez failed to provide such information.

The trial of co-defendant Velasquez began on August 13, 2003. Called as a government witness, Bermúdez testified on August 13 and 14. After speaking with the prosecutor and FBI case agent during a lunch break, Bermúdez revised his initial direct examination testimony about the details of his first visit to Montegio's home in the summer of 2002, conceding that his initial testimony had been different. Thereafter, upon cross examination, Bermúdez conceded that he had lied in his earlier testimony, and he furnished details about the charged February 9 drug transaction never previously disclosed to the government. Bermúdez admitted then that the information he had given to the government in his debriefings had not been complete. The jury acquitted Velasquez on all counts.

At Bermúdez's sentencing hearing, the district court found that Bermúdez had given false testimony at the Velasquez trial. Based on that finding, the district court concluded that, under the terms of the supplemental plea agreement, the government was not obligated to file a substantial assistance motion. After reviewing the contradictions and inconsistencies between Bermúdez's trial testimony and the earlier disclosures he made to the

government, the court further held that Bermúdez was ineligible for the safety valve reduction. Accordingly, based on the drug weight admitted by Bermúdez, the district court imposed the mandatory minimum sentence of concurrent ten-year terms of imprisonment as to each count and five years of supervised release. See 21 U.S.C. § 841(b)(1)(A).

## II. Discussion

### A. Substantial Assistance

Bermúdez argues that the district court erred in not ordering specific performance of the government's agreement to file a substantial assistance motion. U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Under 18 U.S.C. § 3553(e), substantial assistance may justify a sentence below the statutorily required minimum sentence. U.S.S.G. § 5K1.1, cmt. n.1.

While we have held that this court ordinarily lacks jurisdiction to review on appeal a district court's refusal to depart downward, United States v. Atwood, 963 F.2d 476, 478 (1st Cir. 1992), we may review whether the government's failure to file a substantial assistance motion violated the plea agreement. See, e.g., United States v. Gonzalez-Perdomo, 980 F.2d 13, 15 (1st Cir. 1992); Atwood, 963 F.2d at 478 (collecting cases). The latter

question is looked at de novo. United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995).

Plea agreements are interpreted under principles of contract law. Id. at 12; Atwood, 963 F.2d at 479. "If the defendant lives up to his end of the bargain, the government is bound to its promises. On the other hand, if the defendant fails to fulfill his promises, the government is released from its agreement . . . ." United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987).

Here, the supplemental plea agreement provides that "if [Bermúdez's] testimony or his debriefing by federal agents is not truthful, or accurate, or complete, his plea of guilty shall stand, [and] the Government will not be obligated to adhere to the terms of the plea agreement." Bermúdez argues that he provided substantial assistance to the government, including meeting with federal agents twice and testifying as the key witness against Velasquez over the course of two days of trial. Bermúdez concedes that he "backtracked on a few areas and subsequently revised his testimony," but contends that "on balance a fair reading of all his testimony is that he gave a truthful account."

The district court found that Bermúdez gave false and inconsistent testimony at the Velasquez trial. The court expressly found that Bermúdez had stated in his debriefings with the government in connection with his first visit to Montegio's home

-7-

that: (1) he knew the purpose of the trip was a drug transaction; (2) the transaction involved five to ten kilograms of cocaine; and (3) he had been paid between $1,000 and $2,000 for his services. On direct examination at the Velasquez trial, however, Bermúdez initially testified that: (1) he did not know for sure whether it was a drug transaction; and (2) he had only been paid $500 for his services. After speaking with the prosecutor and FBI case agent during the lunch break, Bermúdez revised his initial direct examination testimony and reverted to what he had said in the debriefing. He stated that his earlier testimony had been different because this was his first time testifying and he was nervous. On cross examination, Bermúdez conceded that he had "lied" in his earlier testimony.

Beyond other instances of false testimony, the court found "this [instance] alone [] enough to relieve the Government of any obligation it had to move for a downward departure under the terms of the plea agreement." Concluding that a single episode is enough is not without precedent. See, e.g., United States v. Cruz-Mercado, 360 F.3d 30, 34 (1st Cir. 2004) (government's decision not to file a substantial assistance motion was within its discretion where the defendant failed "in one instance" to meet his obligation under the plea agreement to be truthful and stipulated to an upward adjustment for obstruction of justice); Gonzalez-Sanchez, 825 F.2d at 578-79 (trial court's determination that

defendant breached plea agreement to cooperate honestly and fully in giving testimony at trial was amply supported by the record, where defendant's testimony as to who set fire to a certain business differed from his earlier statement to FBI agents).

But even assuming arguendo that more was needed, the district court also pointed to the fact that Bermúdez admitted on cross examination that the information he had given the government in his debriefings about the charged February 9 drug transaction had been incomplete.  This admission followed his disclosure during cross examination of additional details of the transaction not revealed during his debriefings or on direct examination.

As the district court's ultimate finding that Bermúdez's trial testimony and debriefing statements had not been "truthful, or accurate, or complete," as required by the plea agreement, was amply supported, we are satisfied that the district court properly refused to order specific performance of the government's agreement to file a substantial assistance motion.

## B.  Safety Valve

Bermúdez argues that the district erred in finding that he was ineligible for the safety valve reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.  Congress enacted the safety valve provision, 18 U.S.C. § 3553(f), in order to limit the harsh effect of mandatory minimum sentences in certain cases.  See United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000).  The

Sentencing Commission incorporated the text of § 3553(f) verbatim into the Guidelines.  Id.  U.S.S.G. § 5C1.2 provides:

> [T]he court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:
>
> (1) the defendant does not have more than 1 criminal history point . . . ;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . ; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

As the parties agree, only the fifth element of the safety valve provision is in dispute.  The issue is whether the district court clearly erred in finding that Bermúdez had not satisfied the requirement that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the

-10-

offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ."  U.S.S.G. § 5C1.2(a)(5).

Our review of the court's adverse factual finding on the safety valve issue is for clear error.  United States v. Marquez, 280 F.3d 19, 22 (1st Cir. 2002).  Review under the clear error standard is "extremely deferential."  Id. at 26.  Under that standard, "an appellate court ought not to disturb either findings of fact or conclusions drawn therefrom unless the whole of the record compels a strong, unyielding belief that a mistake has been made."  United States v. Matos, 328 F.3d 34, 40 (1st Cir. 2003).

A defendant who wishes to take advantage of the safety valve bears the burden of showing that he has made truthful, complete, and timely disclosures to the government.  Id. at 39.  We have made it clear that "nothing short of truthful and complete disclosure will suffice."  Id. at 38; see Marquez, 280 F.3d at 24; United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

In the instant case, the district court carefully considered Bermúdez's inconsistent testimony at the Velasquez trial, compared it to his debriefing statements, and based the denial of the safety valve reduction on specific factual findings. The court recounted in detail, citing the relevant pages of the Velasquez trial transcript and the debriefing summary memorandum, the instances in which Bermúdez's debriefing statements were incomplete and/or inconsistent with his trial testimony.

In addition to the initially inconsistent and admittedly false testimony about his first visit to Montegio's home, see supra Part II.A, the district court found that Bermúdez's disclosures to the government had not been truthful and complete in other respects.

Relative to the charged February 9 drug transaction itself, Bermúdez testified on cross examination to information he had failed to disclose during the debriefings or on direct examination. Bermúdez had told the government during the debriefings that he was at Velasquez's home on the afternoon of February 9 when two Columbian males arrived with the cocaine. He said he stayed in the living room while the two Columbians entered the bedroom with Velasquez. After the Columbians left, Bermúdez said he went into the bedroom where Velasquez showed him the cocaine.

In his testimony on direct examination at the Velasquez trial, however, Bermúdez added that he could not see into the bedroom because the door was closed and, therefore, did not know what the three men were doing in the bedroom. On cross examination, Bermúdez added more new information -- that there were women and children in the drug suppliers' vehicle; that one of the men was Columbian and one was Mexican, a determination he made from hearing them speak; that he knew one of the men, contrary to his prior statements otherwise; and that he had been called into the

bedroom while the men were present to see if the cocaine was acceptable for Montegio. The district court was struck in particular by Bermúdez's testimony that he had been called into the bedroom to view the cocaine, because this testimony was inconsistent with his contention that he had no expertise on drugs.

The district court found that a February 8 phone conversation between Bermúdez and Montegio indicated the falsity and incompleteness of Bermúdez's disclosures to the government. At the Velasquez trial, Bermúdez testified that Velasquez was sitting right next to him during the phone call and told him that a price of $22,000 per kilogram of cocaine was okay with him. The district court listened to the taped conversation multiple times and found "no indication whatsoever . . . that anyone is sitting next to or being spoken to by Bermúdez." The court concluded that Bermúdez was the one negotiating the price with Montegio. The court also found that the recording belied Bermúdez's trial testimony that he had not yet seen the cocaine at the time of the phone call, because Bermúdez described the cocaine to Montegio in a way that implied that he had already seen it.

Finally, the district court noted Bermúdez's inconsistent disclosures as to the amount of money he was to receive from the charged February 9 drug transaction. In his first debriefing, Bermúdez stated that he expected to receive $4,000 to $5,000 from Velasquez. In his second debriefing, he changed that amount to

-13-

$10,000. At the Velasquez trial, Bermúdez admitted he had made this mistake as to the amount.

The district judge concluded that "all of these areas of discrepancy and changing of stories, of gaps, of missing information, of new information occurring to him" were "too much to be attributed to either coincidence or nervousness or any other excuse." Even more significantly, the court went on to state, "I, frankly, at the end of all of this, I don't know what happened in this transaction. I'm not sure which aspects of these various stories to believe." Accordingly, the district court concluded that Bermúdez had failed to prove, as it was his burden to do, that his proffers to the government had been truthful and complete.

Bermúdez concedes that he made misstatements at the Velasquez trial and added information he had not previously disclosed to the government. He contends, however, that he is entitled to the safety valve because he gave a truthful and complete account to the government by the close of his testimony and before the commencement of the sentencing hearing. Bermúdez points out that the safety valve statute, 18 U.S.C. § 3553(f)(5), and the guideline, U.S.S.G. § 5C1.2, require truthful and complete disclosures to be made to the government not later than the time of the sentencing hearing. See Matos, 328 F.3d at 39. Under his theory, any prevarication or incompleteness at an earlier stage was cured by full disclosure later on.

-14-

But even under this generous standard, Bermúdez's argument fails. At the sentencing hearing, the court made clear its uncertainty whether Bermúdez had ever made full disclosure. It was Bermúdez's burden to establish that he had done so. Id.; Marquez, 280 F.3d at 23. It was permissible for the court to infer from Bermúdez's inconsistency, as it seems to have done, that his credibility was so shaky that no version yet rendered could be taken as true and complete. Cf. United States v. Schreiber, 191 F.3d 103, 107 (2d Cir. 1999) (noting that defendant who changes his story to match the government's evolving knowledge of the events runs the risk of undermining his credibility). After reviewing at sentencing the "final rendition of the facts" set forth by Bermúdez, the district judge found, as already noted, that, "at the end of all of this, I don't know what happened in this transaction." On this record, the district judge did not err, let alone clearly err, in finding that Bermúdez had not fulfilled his burden of proving that he had provided to the government a truthful and complete disclosure by the time of sentencing.

Bermúdez also contends that his contradictions and omissions related merely to tangential matters, hence should not disqualify him from the safety valve. We do not accept his "tangential" characterization. The safety valve provision states that the required disclosure must concern "the offense or offenses that were part of the same course of conduct or of a common scheme

or plan." U.S.S.G. § 5C1.2(a)(5). The contradictions and non-disclosures in issue fell well within the parameters of this requirement. They include when Bermúdez first knew of Montegio's drug trafficking activities, how the arrangement for the charged drug transaction was made, how the cocaine was obtained, the amount of money Bermúdez received for his services, and the extent of Bermúdez's knowledge of drugs. These matters directly relate to the offenses of conviction and concern the same course of conduct that led to Bermúdez's arrest. They also bear on co-defendant Velasquez's ultimately successful claim that it was Bermúdez, and not himself, who was the chief culprit. For safety valve purposes, courts are not easily persuaded of the unimportance of omissions and misstatements. See, e.g., Matos, 328 F.3d at 41 (rejecting defendants' argument that most of their contradictions and omissions related to peripheral matters and thus should not deprive them of the benefits of the safety valve). A defendant must "provide 'all' information to the government." Marquez, 280 F.3d at 25 (rejecting argument that non-disclosures were immaterial).

In light of Bermúdez's misstatements at the Velasquez trial as well as the inconsistencies between his trial testimony and debriefing statements, the district court did not clearly err in determining that Bermúdez failed to provide truthful and complete information to the government such as warranted safety valve relief.

-16-

## C. **Booker** Claim

In his original brief, Bermúdez argued for the first time on appeal that his case should be remanded for resentencing under Blakely v. Washington, 124 S. Ct. 2531 (2004), because the factual determinations regarding substantial assistance and safety valve relief, either of which would have allowed a sentence lower than the mandatory minimum, were not submitted to a jury. After United States v. Booker, 125 S. Ct. 738 (2005) was decided, this Court invited both parties to submit supplemental briefing on the impact of that case. Because Bermúdez did not argue in the district court error under Apprendi v. New Jersey, 530 U.S. 466 (2000), or Blakely, or that the Guidelines were unconstitutional, plain error analysis applies. United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005).

Bermúdez's primary argument is a Blakely type argument -- that resentencing is required because the district court, and not a jury, made the following findings to "enhance" his sentence in violation of the Sixth Amendment: (1) that the United States had not breached its agreement to file a substantial assistance motion and (2) that he did not qualify for the safety valve reduction. But a factual finding resulting in the denial of a sentencing reduction, as in the present case, is scarcely an "enhancement." See Booker, 125 S. Ct. at 756 (holding that "the Sixth Amendment is violated by the imposition of an enhanced sentence under the United

-17-

States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant") (emphasis added). Cf. United States v. Carey, 382 F.3d 387, 389 & n.1 (3d Cir. 2004) (suggesting Blakely was irrelevant to judicial determination of "a fact adverse to [the defendant's] entitlement to a downward departure"). Moreover, it is clear from the Supreme Court's case law that refusals to reduce a statutory sentence based on judicial factfinding do not violate the defendant's Sixth Amendment rights. See Harris v. United States, 536 U.S. 545, 558-60 (2002) (judicial factfinding triggering a statutory mandatory minimum does not implicate the Sixth Amendment). Only judge-found facts that serve mechanically to raise a defendant's sentence above that authorized by the jury verdict or guilty plea amount to Sixth Amendment violations. Booker, 125 S. Ct. at 756. Bermúdez does not claim that judicial factfinding served to raise his sentence above that authorized by his guilty plea; rather, he claims that judicial factfinding prevented him from getting a potentially lower sentence than what he might have gotten absent that judicial factfinding. Such a claim simply does not implicate Blakely.

In any event, we rejected the premise of this argument in Antonakopoulos. There, we held that "[t]he error [under Booker] is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that

-18-

authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system." Antonakopoulos, 399 F.3d at 75.

Had the district court erred in the findings on which the substantial assistance and safety valve decisions were based, that error would, of course, provide a basis for remand. Id. at 82. As we have explained, however, no such error occurred. See supra Parts II.A & B.

In supplemental briefing Bermúdez contends that his sentence should be vacated and remanded under Booker, arguing that he was erroneously sentenced under a mandatory Guidelines system, and that, in effect, there is a reasonable probability that the district court would have given him a lower sentence under advisory Guidelines. Antonakopoulos, 399 F.3d at 83.

However, as is clear from Antonakopoulos, Bermúdez fails to satisfy even the first prong of the plain error test. Contrary to his assertion, Bermúdez was not erroneously sentenced under a mandatory Guidelines system. Rather, he was sentenced to a statutory mandatory minimum based on an amount of drugs, 8954.06 grams, to which he admitted being involved with in his plea agreement. See 21 U.S.C. § 841(b)(1)(A) (where the offense involves "5 kilograms or more" of cocaine, the defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"). Bermúdez was sentenced to ten years'

imprisonment, the statutory mandatory minimum penalty that could have been imposed. As this court said in <u>Antonakopoulos</u>, "[a] mandatory minimum sentence imposed as required by a statute based on facts found by a jury or admitted by a defendant is not a candidate for <u>Booker</u> error." 399 F.3d at 75. Since Bermúdez was sentenced to a statutory mandatory minimum, rather than to an erroneously mandatory Guideline amount, no <u>Booker</u> error occurred. The mere fact that he did not receive the benefit of a downward departure or adjustment based on substantial assistance or the safety valve is irrelevant to that conclusion.

### III. Conclusion

For the foregoing reasons, the sentence is **<u>affirmed</u>**.