FILED

JUL 12 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   EC-15-1173-TaJuD |
| ARVIND KAUR SETHI, ) | Bk. No.   2:10-bk-40553 |
| Debtor. ) | Adv. No.  2:11-ap-2273 |
| _____) | |
| ARVIND KAUR SETHI, ) | |
| Appellant, ) | |
| v. ) | **MEMORANDUM**[*] |
| WELLS FARGO BANK, NATIONAL ) ASSOCIATION, ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on June 23, 2016
at Sacramento, California

Filed – July 12, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable David E. Russell, Bankruptcy Judge, Presiding

———————————

Appearances:    Michael R. Totaro of Totaro & Shanahan for
Appellant; Amanda Nicole Griffith of Ellis Law
Group, LLP for Appellee.

———————————

Before:   TAYLOR, JURY, and DUNN, Bankruptcy Judges.

———————————

[*]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

## INTRODUCTION

Appellant Arvind Sethi appeals from a judgment, following remand from this Panel, sustaining Wells Fargo Bank, N.A.'s objections to discharge pursuant to various provisions of § 727(a).[1]

We REVERSE.

## FACTS

This appeal follows a remand to the bankruptcy court for findings sufficient to support its discharge denial under § 727(a). See Sethi v. Wells Fargo Bank, N.A. (In re Sethi), BAP No. EC-13-1312-KuJuTa, 2014 WL 2938276 (9th Cir. BAP June 30, 2015) ("Sethi I"). The bankruptcy court had entered a judgment after trial in favor of Wells Fargo Bank on its claims under § 727(a)(2), (a)(4)(A), and (a)(5). Sethi I details extensively the factual background of the case and, thus, we recount only those facts relevant to this appeal.

This is the Debtor's second bankruptcy case. At some point, she and her two corporations began experiencing financial difficulties, and, thus, she filed a chapter 13 case; her corporations did not follow suit. Prior to the first case, certain medical equipment owned by one or both of the corporations was moved to a storage facility owned by a friend. The Debtor later claimed at the § 341(a) meeting of creditors in her first case that she did not know where the equipment was; this later proved to be false.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

The first case was unsuccessful and dismissed on the trustee's motion. The Debtor then commenced the second chapter 13 case, culminating in the discharge denial on appeal for the second time.

On remand, the bankruptcy court attempted to clarify its factual findings on the record at a continued hearing. See Hr'g Tr. (Mar. 12, 2015). For the purposes of § 727(a)(2) and, by extension, § 727(a)(5), it determined that the equipment transferred prepetition was property of the estate because the Debtor was the sole shareholder of the medical corporation and controlled the assets; the bankruptcy court, thus, reasoned that any assets owned by the medical corporation came into the bankruptcy estate. Even if the equipment was not property of the estate, the bankruptcy court found that the Debtor concealed the equipment in her first bankruptcy case and continued the concealment in this second case. It found that this supported discharge denial.

The bankruptcy court further clarified that, for purposes of § 727(a)(4)(A), it had relied on two false statements: the Debtor's false statement at the § 341(a) meeting in the first bankruptcy case and the Debtor's October 2010 declaration filed in the second bankruptcy case. Counsel for Wells Fargo pressed the bankruptcy court for additional clarity on the issue of intent. The bankruptcy court then reiterated that the Debtor harbored an intent to hinder or delay Wells Fargo when she concealed and lied about the whereabouts of the equipment in the first bankruptcy case.

After the bankruptcy court issued a civil minute order

3

denying discharge as supported by the findings made on the record, the Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in denying the Debtor's discharge following remand by the Panel for sufficient fact finding.

**STANDARDS OF REVIEW**

We review the denial of discharge as follows: (1) determinations of the historical facts are reviewed for clear error; (2) selection of the applicable legal rules under § 727 are reviewed de novo; and (3) application of the facts to those rules requiring the exercise of judgments about values animating the rules are reviewed de novo. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

**DISCUSSION**

The Debtor argues that the bankruptcy court abused its discretion by disregarding the law of the case as established by Sethi I and by considering matters beyond the scope of the remand. She also argues that the bankruptcy court erred in its application of the standards for denial of discharge.

Based on our review of the record, we agree that the

4

bankruptcy court considered matters beyond the scope of the remand in Sethi I and, thus, that it exceeded the Panel's mandate. This error was not harmless.

Discharge denial under § 727(a)(2) is warranted where the debtor, with the "intent to hinder, delay, or defraud a creditor . . . transferred, removed, destroyed, mutilated, or concealed" either property of the debtor (within one year before the date of petition) or property of the estate (after case commencement). Section 727(a)(5), in turn, provides for discharge denial where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

In Sethi I, the Panel recognized that "[t]he plain language of the statute support[ed] [the Debtor's] legal proposition that the assets disposed of must have been her assets, rather than property of one of her corporations." 2014 WL 2938276, at *6. It found that the bankruptcy court had not made any alter ego findings and, in fact, that Wells Fargo had raised the issue for the first time on appeal. The Panel, thus, concluded that "Wells Fargo was entitled to prevail on its § 727(a)(2) claim only if it proved that the property [the Debtor] concealed was her own property and not property of one of her corporations." Id. It explicitly remanded for findings on whether the concealed equipment was owned by the Debtor personally or by one of her two corporations. In doing so, the Panel expressly advised that "if the bankruptcy court on remand based on the evidence presented [did] not find that [the Debtor] personally

5

owned some of the concealed equipment, then it should rule against Wells Fargo on its § 727(a)(2) claim." Id. at *9.

On remand, the bankruptcy court effectively dismissed this instruction. It rejected the applicability of alter ego theory based on its determination that the Debtor was the sole shareholder of the medical corporation and, thus, that the corporation's assets were property of the Debtor's individual bankruptcy estate. This was error.

As we explained in Sethi I, "California law recognizes the separateness of corporate assets and liabilities." 2014 WL 2938276, at *6 (citing Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (2000)). And, moreover, "so have the better-reasoned federal cases interpreting the scope of § 727(a)(2)." Id. (collecting cases). The bankruptcy court's refusal to acknowledge the separateness of asset ownership between the Debtor and her corporations is troublesome. That the Debtor personally guaranteed the loans to purchase the equipment is irrelevant, as is the fact that the Debtor was the sole shareholder of the medical corporation. While that may have meant that the corporate stock was estate property, the reach of § 541(a) in an individual bankruptcy case did not automatically extend to corporate assets.

The record further reveals that the bankruptcy court improperly conflated the concept of property of the debtor under § 727(a)(2)(A) with property of the estate under § 727(a)(2)(B). To the extent that this error formed the basis of its analysis as to the equipment, it was also error. There is no dispute that the equipment was transferred prior to commencement of the

6

first case. Thus, as a matter of law, the equipment could not constitute property of the estate in the second case. Such an interpretation would render § 727(a)(2)(A) superfluous.

In sum, the bankruptcy court erred in determining that the equipment was property of the Debtor's estate. As a result, it erred in denying discharge under § 727(a)(2). By extension, the bankruptcy court also erred in determining discharge denial under § 727(a)(5). Given that the equipment was owned by one or both of the Debtor's corporations and not the Debtor personally, the equipment was not an asset of the Debtor within the scope of § 727(a)(5).

The bankruptcy court did not fare better on remand as to Wells Fargo's § 727(a)(4)(A) claim. That section provides for discharge denial where "the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account." A false oath includes false statements in a declaration signed by the debtor under penalty of perjury and submitted to the bankruptcy court. Abbey v. Retz (In re Retz), 438 B.R. 237, 301 (Bankr. D. Mont. 2007), aff'd, 2008 WL 8448824 (9th Cir. BAP 2008), aff'd, 606 F.3d 1189 (9th Cir. 2010). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007) (internal quotation marks and citation omitted), aff'd, 578 F.3d 1167 (9th Cir. 2009).

The objector to discharge must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in

7

connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Retz, 606 F.3d at 1196-97 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)). Objections to discharge are liberally construed in favor of the debtor and against the objector. In re Khalil, 379 B.R. at 172. For that reason, the objector bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied. Id.

The Sethi I Panel's remand for findings was limited[2] to just two areas: first, whether the bankruptcy court relied on the Debtor's statements in the first bankruptcy case; to the extent it did so, the Panel advised that such reliance was improper as a false oath in the second bankruptcy case. Id. at *10. And, second, whether the Debtor made the statements in the October 2010 declaration fraudulently. Id.

**The false oath.** Once again, despite the Panel's instructions, the bankruptcy court affirmed that it had relied on both the Debtor's statements at the § 341(a) meeting in the first bankruptcy case and her October 2010 declaration filed in the second case. As the Panel previously pointed out, however, the Debtor's statements in the first bankruptcy case could not

---

[2] The Panel determined that the Debtor's October 2010 declaration and subsequent admissions constituted a false oath. 2014 WL 2938276, at *10. In doing so, it determined that the record established that the Debtor made the false statements knowingly and that they were material. Id. at *9. We deem these determinations law of the case and, thus, we do not review the second and third elements on appeal.

8

serve as a false oath in the second bankruptcy case. 2014 WL 2938276, at *10. Thus, the bankruptcy court's reliance on this statement was erroneous. As the Sethi I Panel determined, however, the bankruptcy court appropriately relied on the October 2010 declaration as a false oath.

**Fraudulent intent.** To demonstrate fraudulent intent, the objector bears the burden of showing that the debtor: (1) made the false oath; (2) at the time he knew it was false; and (3) with the intent and purpose of deceiving creditors. In re Retz, 606 F.3d at 1198-99 (internal quotation marks and citation omitted). Intent is typically shown by circumstantial evidence or by inferences drawn from the debtor's conduct. Id. at 1199. "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent." Id. (internal quotation marks and citation omitted).

On remand, the bankruptcy court repeatedly discussed the state of mind necessary for discharge denial under § 727(a)(2) in relation to the § 727(a)(4)(A) claim. As stated, counsel for Wells Fargo requested clarification on this point. Nonetheless, in response, the bankruptcy court continued to focus on § 727(a)(2):

> I'm referring specifically to the language of
> 727(a)(2) which talks about hinder, delay, or defraud.
> Well, hinder and delaying is basically the same in my
> view as defraud. In other words, hiding the assets;
> that's an attempt to defraud the creditor of the
> creditor's rights, so I don't think there needs to be
> a distinction, but if that is what the BAP requires,
> then deception is certainly part of -- I think my
> finding that she was lying is sufficient for the
> finding that she was defrauding. The whole purpose of
> lying is to defraud, so anyway, I don't think I need

9

to go any further than that.

Hr'g Tr. (Mar. 12, 2015) at 29:15-25.

This was error. Contrary to the bankruptcy court's conclusions, an intent to hinder or delay a creditor for the purposes of § 727(a)(2) is not synonymous to or interchangeable with an intent to deceive a creditor within the meaning of § 727(a)(4)(A).

We also note that the only false oath appropriately at issue was the Debtor's October 2010 declaration. That declaration, however, was filed in connection with the Debtor's motion to convert from chapter 13 to chapter 11. Although intent to deceive a creditor is typically established by circumstantial evidence, here, the context of the Debtor's statements makes it impossible to assume that the bankruptcy court inferred deceptive intent sufficient for discharge denial based on the Debtor's statements in her declaration. In other words, it is a stretch to infer that the Debtor intended to deceive creditors when she stated in the October 2010 declaration that she filed the second bankruptcy case pro se, when this statement is considered in the context of her motion to convert and in the context of her second bankruptcy case. It is far more plausible to assume, as her attorney argued, that this statement was a result of blindly signing a document containing an error created by counsel.[3]

Given that the bankruptcy court erred by relying on the

---

[3] To be clear, this type of conduct might be sanctionable but it does not support cleanly a determination of intent to commit fraud sufficient for discharge denial.

Debtor's statements in the first bankruptcy case to find a false oath in the second bankruptcy case and that it failed to make findings as to the requisite state of mind on remand directly in relation to § 727(a)(4)(A) and the Debtor's statements in the October 2010 declaration, we conclude that it erred in denying the Debtor's discharge under § 727(a)(4)(A).

## CONCLUSION

Based on the foregoing, we REVERSE.